# In the United States Court of Federal Claims

Case No. 07-776 T
(Filed: October 27, 2009)
**TO BE PUBLISHED**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * * *<br><br>**MANOR CARE, INC., (f/k/a HCR MANOR CARE, INC.) and Affiliated Subsidiaries,**<br><br>and<br><br>**HCR MANOR CARE, INC. and Affiliated Subsidiaries,**<br><br>and<br><br>**MANOR CARE OF AMERICA, INC., and Affiliated Subsidiaries**,<br><br>        *Plaintiffs*,<br>    v.<br><br>**THE UNITED STATES OF AMERICA,**<br>        *Defendant*.<br>* * * * * * * * * * * * * * * * * * * * * * * * * * | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Tax refund case; Employer Tax Credits; Work Opportunity Tax Credit and Welfare- to-Work, 26 U.S.C.A. §§ 51 and 51A; Statutory construction; Qualified individuals "certified by the designated local agency;" Special rules for certifications, 26 U.S.C.A. §§ 51(d)(12); "receive or request" provision; Government's failure to issue guidance on eligibility criteria. |

      **Gerald A. Kafka**, Latham & Watkins LLP, Washington, D.C., attorney of record for the Plaintiffs.  With him on the briefs were **Rita A. Cavanagh** & **Paul B. Hynes, Jr.**

      **W.C. Rapp,** Court of Federal Claims Section, Tax Division, Department of Justice, Washington, D.C., attorney of record for the Defendant.

      **John Bergen**, law clerk; **Elizabeth Krabill**, intern.

## OPINION

**BASKIR, Judge.**

      This is a tax refund case brought under the Tucker Act, 28 U.S.C. § 1491 (a)(1). Plaintiffs, Manor Care, Inc.; HCR Manor Care, Inc.; and Manor Care of America, Inc. (collectively Manor Care or plaintiffs), seek refunds measured by wages paid to approximately 3,000 new employees whom they contend are members of statutorily defined targeted groups, which entitled the employer to take certain tax credits.

Plaintiffs contend that they should have been permitted to claim the tax credits despite the fact that the employees were denied certification as belonging to those groups by the appropriate state employment security agencies.  Accordingly, Manor Care moves for partial summary judgment on liability, arguing that submitting requests for certification alone is sufficient to earn an employer the tax credits.  Manor Care argues, in the alternative, that even if certification is required by statue, unusual circumstances entitle them to claim the tax credits despite the fact that certification was denied for the employees.

_____This matter is before us on the parties' respective Motions for Summary Judgment.  **For the following reasons, we GRANT defendant's Motion for Summary Judgment and DISMISS Manor Care's complaint.**

## I.    BACKGROUND

### A.    Statutory Framework

Pursuant to the Internal Revenue Code of 1986 (IRC ), as amended, 26 U.S.C.A. (hereinafter "Code") §§ 51 and 51A (Supp. I 2000), employers are entitled to tax credits if certain conditions are fulfilled regarding their hiring of specified categories of employees.  *See* Code §§ 51(d) and 51A(c). (References to Code provisions are to those in effect during the taxable years at issue, and have since been renumbered.) The purpose of the credits is to encourage employers to hire employees who are members of targeted groups of disadvantaged persons.

Employers may receive a work opportunity tax credit (WOTC) equal to 40 percent of qualified first-year wages.  Code § 51(a) (Supp. I 2000).  Qualified first-year wages are those "paid by the employer ... to individuals who are members of a targeted group" during such an individual's first taxable year of work for that employer. *Id.* at § 51(b)(1)-(2).

Furthermore, employers may receive a welfare-to-work (WtW) tax credit equal to 35 percent of qualified first-year wages and 50 percent of qualified second-year wages. Code § 51A(a) (Supp. I 2000).  In order to qualify for the WtW credit, the employer must have paid wages to individuals who are recipients of long-term family assistance.  *Id.* at § 51A(b)(1).

The statute identifies the eight disadvantaged groups eligible for the work opportunity tax credit:

> An individual is a member of a targeted group if such
> individual is – (A) a qualified IV-A recipient, (B) a qualified
> veteran, (C) a qualified ex-felon, (D) a high-risk youth, (E) a

> vocational rehabilitation referral, (F) a qualified summer
> youth employee, (G) a qualified food stamp recipient, or (H)
> a qualified SSI recipient.

Code § 51(d)(1).

Section 51(d)(2)-(9) of the Code identifies the substantive requirements of each targeted group separately. A "qualified veteran," for instance, is defined in two parts. The "veteran" status is determined by reference to certain active duty service requirements; more particularly, the designated local agency's certification of having met those requirements. *See id.* at §51(d)(3)(B)(i)-(ii) (180-day and service-connected disability requirements). However, a "qualified veteran" is further defined as "any veteran who is certified by the designated local agency as being a member of a family receiving assistance under a food stamp program under the Food Stamp Act of 1977 for at least a 3-month period ending during the 12-month period ending on the hiring date." *Id.* at § 51(d)(3)(A).

Likewise, a "high risk youth," for purposes of the tax credit, is characterized as an individual who is certified by the designated local agency as having attained at least age 18 but not yet age 25 on the hiring date, and as having a principal place of abode within an empowerment zone or enterprise community. *Id.* at § 51(d)(5)(A)(i)-(ii). Furthermore, the employer may not obtain tax credits on behalf of the individual for any wages paid during periods of time in which the high-risk youth did not reside in the zone. *Id.* at § 51(d)(5)(B). These two examples, which illustrate the unique and factually precise nature of the qualification standards, share one thing in common with the remainder of the targeted groups – they include only "qualified" employees, who are "certified by the designated local agency" as meeting those qualifications. *Id.* at §§ 51(d)(2)-(10).

During the relevant time frame, long-term family assistance recipients were defined at Code section 51A(c) (Supp. I 2000). Section 51A has since been subsumed into section 51, and long-term family assistance recipients are currently defined at Code section 51(d)(10). Individuals on long-term family assistance are essentially a ninth targeted group.

In addition to the substantive requirements of each targeted group, a "special rules for certification" provision provides:

An individual shall not be treated as a member of a targeted group unless –

(i)     on or before the day on which such individual begins work for the
        employer, the employer has *received* a certification from a designated
        local agency that such individual is a member of a targeted group, *or*

(ii)    (I) on or before the day the individual is offered employment with the employer, a pre-screening notice is completed by the employer with respect to such individual, and
(II) not later than the 21st day after the individual begins work for the employer, the employer submits such notice, signed by the employer and the individual under penalties of perjury, to the designated local agency as part of a written *request* for such a certification from such agency.

Code § 51(d)(12)(A) (emphasis added).  This provision was in effect without change during the period in question, from 1998 to 2001.

B.    <u>Factual Background</u>

The following facts are taken from the papers filed by the parties and are not in dispute for the purposes of the present motions.  The government accepts as true the facts set out in Manor Care's memorandum, although defendant does not concede that these facts are accurate, material, or relevant.  Since each party believes that it is entitled to summary judgment based on the same factual assumptions, no inferences need to be made in favor of either party for the purposes of ruling on the motions.

Plaintiffs, operators of nursing homes, are three corporations that comprise a single taxpayer due to corporate reorganization.  During tax years 1998 through 2001, they hired certain employees believed to be members of the statutorily defined targeted groups.  Plaintiffs' Memorandum (Pl. Mem.) at 7-8.

Pursuant to the Code, Manor Care made requests to state employment and social security agencies that certain employees be certified as members of targeted groups.  Each job applicant completed a Pre-Screening Notice and Certification Request form, as required by the Internal Revenue Service (IRS).  Pl. Mem. at 8.  The applicant provided pertinent information, such as his or her receipt of government assistance, and signed the form under penalty of perjury.  *Id.*; *see* Pl. Mem., Appendix A at Exhibit 4.

Manor Care then determined whether the applicant appeared to belong to a targeted group.  Pl. Mem. at 7-8.  Plaintiffs had no access to applicants' records of government assistance, and they made no attempt – nor are they required – to investigate the validity of each claim.  Plaintiffs' Reply and Opposition at 12.  Instead they reviewed the information provided by the applicant and determined whether he or she had checked the appropriate boxes indicating membership in a targeted group.  Pl. Mem. at 7-8.  If Manor Care believed that the applicant belonged to a targeted group, Manor Care completed and signed the form under penalty of perjury and submitted it to the designated state employment security agency, requesting that the applicant be certified as a member of a targeted group.  Pl. Mem. at 8; Consolidated Statement of Uncontroverted Facts (CSUF), ¶¶ 1-4.

The local agency verified the applicant's receipt of governmental assistance.  If the applicant was in fact receiving the aid claimed on the form, and if he or she satisfied all of the substantive requirements of membership in a targeted group, the agency was directed to certify the applicant as a member of that group.  If the applicant was not eligible for group membership under the terms of the statute, the request for certification was denied.  If an applicant was denied certification in a case in which the employer believed certification was warranted, the employer was directed to ask the local agency for a review of the request.

Three thousand of Manor Care's requests for certification were reviewed and denied by local agencies during tax years 1998 through 2001.  CSUF, ¶ 5.  Manor Care did not ask the designated local agencies to review their denials and does not know the grounds for the denials.  The number of plaintiffs' total requests is not known; Manor Care may or may not have employed other individuals who were certified as belonging to targeted groups.  Also unknown are the specific targeted groups to which the denied employees supposedly belonged and the basis for Manor Care's belief that the denials of certification were erroneous.

Manor Care does not submit evidence that any of the specific employees in question actually were members of targeted groups and does not claim entitlement to a tax credit on that basis.  The only basis for that belief seems to be that the employees signed forms indicating what type of government assistance they were receiving.  Out of the 3,000 employees at issue, the exhibits to Manor Care's memorandum include only three employees' certification request forms as illustration.  These forms show the category of targeted groups noted by the employee but do not suggest the basis for denying certification.

Since Manor Care contends that the mere request for certification is sufficient for the tax credit, presumably these unknown facts are legally irrelevant to plaintiffs' first argument.  As we shall see, however, these facts might be important for purposes of deciding Manor Care's alternative argument.

C.    Procedural History

The plaintiffs did not report WOTC or WtW credits relating to the approximately 3,000 employees identified above on their federal income tax returns during the years in question.  CSUF, ¶ 7-8.   Plaintiffs timely filed amended returns in 2005, and on November 5, 2007, filed a Complaint against the United States, alleging liability for tax overpayments in excess of $3.4 million between 1998 and 2001.  In its Complaint, Manor Care alleges that it complied with the certification requirements of the statute and thus is entitled to the employer tax credits at issue.

The parties argue that this case can be resolved as to liability on summary judgment.  Each party contends that section 51 should be enforced according to its plain language.  Accordingly, plaintiffs moved for partial summary judgment on the

issue of liability alone.  In the alternative, plaintiffs contend that even if they did not meet the certification requirement, they should receive the tax credits due to unusual circumstances.  In support of the alternative argument, Manor Care cites two district court cases in which tax credits were allowed where certification was lacking.

Defendant disputes plaintiffs' characterization of the statute's requirements and argues that the premise of plaintiffs' alternative argument is inapplicable to this case.  The government opposed the partial summary judgment motion and filed a cross-motion for summary judgment, pursuant to RCFC 56(b).  Briefing was complete August 25, 2009.  At the request of the parties, oral argument was held on October 15, 2009.

## II.   DISCUSSION

   A.   <u>Legal Standards</u>

*Jurisdiction*

The Tucker Act grants to this Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2008).  Sovereign immunity is waived for claims alleging a federal statute which "can be fairly interpreted as mandating compensation by the Federal Government for the damage sustained."  *United States v. Testan*, 424 U.S. 392, 400, *reh'g denied*, 425 U.S. 957 (1976) (quoting *Eastport Steamship Corp. v. United States*, 178 Ct. Cl. 599, 605-06 (1967)).

It is well accepted that this waiver of sovereign immunity extends to claims based upon the unlawful or erroneous assessment of taxes by the United States.  These tax refund suits fall within the jurisdiction of the Court of Federal Claims, provided full payment of any assessment is first made by the claimant to the IRS.  *Flora v. United States*, 362 U.S. 145, 177 (1960); *Shore v. United States*, 9 F.3d 1524, 1527 (Fed. Cir. 1993); 28 U.S.C. 1346(a).  Although other jurisdictional prerequisites must be met in order to sustain a tax refund claim in this Court, the United States has raised no jurisdictional defects in this matter.

*Summary Judgment*

Disposing of a claim through summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  RCFC 56(c)(1); *Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005).  A material fact is one that would affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Cases such as the one presented here, which involve competing interpretations of a statute, are particularly well-suited for adjudication by summary judgment. *Santa Fe Pacific R. Co. v. United States*, 294 F.3d 1336, 1340 (Fed. Cir. 2002); *see Richmond American Homes of Colorado, Inc., et al. v. United States*, 75 Fed. Cl. 376, 386 (2007).

   B.    Certification Requirement

   The parties have reached a stipulation as to all material facts. *See* Def. Opp. at 2. For purposes of opposing plaintiffs' motion and in support of the instant cross-motion, the United States accepts as true the matters of fact set out in plaintiffs' summary of material undisputed facts. Although a case involving the work opportunity and WtW credits may indeed present outcome-determinative factual determinations, the plaintiffs' partial motion for summary judgment does not rely upon substantive approvals or denials under the statutory tax credit scheme. Rather the plaintiffs focus, as a purely legal matter, on the procedural requirements for obtaining the tax credits at issue.

   Accordingly, the first issue we decide is whether the Internal Revenue Code requires that employees receive certification that they are members of targeted groups in order for the employer to receive the tax credits against their wages, or whether the submission of a request for certification is sufficient. We are aided in this task by traditional canons of statutory construction. *See generally, Xianli Zhang, et al. v. United States*, __ Fed. Cl. __ , 2009 WL 3088790 (Fed. Cl. Sept. 22, 2009) (and cases cited therein).

*Plain Language*

   In construing the statutory requirements of the Internal Revenue Code, "we begin with its literal text, giving it its plain meaning." *See USA Choice Internet Servs., LLC v. United States*, 522 F.3d 1332, 1336 (Fed. Cir. 2008) (quoting *Hawkins v. United States*, 469 F.3d 993, 1000 (Fed. Cir. 2006)); *see also, Gitlitz v. Commissioner*, 531 U.S. 206, 219-220 (2001) (Court relied upon plain text of Internal Revenue Code, despite countervailing policy concern). Under Code sections 51(b)(1)-(2) and 51A(b)(1), an employer's eligibility for work opportunity and WtW tax credits requires the employees for whom it is claiming credits to be members of targeted groups.

   Sections 51(d)(2)-(9) and 51A(c) define each targeted group. Each subsection includes a procedural certification requirement in addition to substantive requirements: a member of a targeted group is an individual "who is certified by the designated local agency" as having certain characteristics. For example:

   The term "qualified SSI recipient" means any individual who is certified by the designated local agency as receiving supplemental security income benefits under title XVI of the Social Security Act (including supplemental security income benefits of the type described in section 1616 of such Act or section 212 of

Public Law 93-66) for any month ending within the 60-day period ending on the hiring date.

Code § 51(d)(9).  Thus, the statute indicates that official, statutory membership in a targeted group requires certification.  Plaintiffs acknowledge that the statute "contemplates certification."  Pl. Mem. at 26**.**  However, they do not agree that the statute explicitly requires it.

A statute should be interpreted, where possible, such that "no clause, sentence, or word shall be superfluous, void or insignificant."  *Duncan v. Walker*, 533 U.S. 167, 174 (2001).  This is especially so in this case, where certification "occupies so pivotal a place in the statutory scheme."  *Id.*  Contrary to Manor Care's argument, certification is an explicit component of the definition of each targeted group and cannot be disregarded.  We give statutory terms their "ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import."  *Kyocera Wireless Corp. v. Int'l. Trade Comm'n*, 545 F.3d 1340, 1355 (Fed. Cir. 2008) (quoting *Williams v. Taylor*, 529 U.S. 420, 431 (2000)).  We have been offered no cogent argument for reading the certification requirement out of the statute.

To the contrary, the local agency certification is made a centerpiece of the tax credit scheme.  As the government noted, each and every target group member is defined by the same phrase: "who is certified by the designated local agency."  As the government argues, the sheer number of references to the certification requirement – it appears ten times in the substantive provisions, alone – is persuasive evidence of Congressional intent.  *See* Def. Opp. at 6 (citing *United States v. Clintwood Elkhorn Mining Co.*, __U.S. __, 128 S.Ct. 1511, 1516 (2008) ("Five 'any's' in one sentence and it begins to seem that Congress meant the statute to have expansive reach.")).  We asked counsel for the plaintiffs during oral argument to provide a rational explanation for the statute's repeated emphasis on the certification requirement within the substantive provisions if in fact agency certification was merely optional under the tax credit scheme. He could not explain this anomaly to our satisfaction.  Oral Argument at 10:27-38.

The certification prerequisite is further described in a provision entitled "special rules for certification."  Code § 51(d)(12).  That subsection, excerpted in part above, applies to both the work opportunity  and WtW credits.  By its plain language, section 51(d)(12)(A) does not provide for automatic group certification for all employees whose paperwork complies with the procedures and occurs during the time frames described in the subsection.  Rather, the provision indicates that *unless* one of the two procedures is followed to obtain certification, an employee may not be treated as a member of a targeted group.

Manor Care misinterprets section 51(d)(12)(A) as expanding the definitions of targeted groups set out in sections 51(d)(2)-(9) and 51A(c).  Plaintiffs contend that the

provision allows credits to be claimed for employees who have not been certified as group members but for whom certification requests have simply been submitted.

A statute is not to be given a construction that is illogical or that causes absurd results, when it can be given a reasonable application consistent with the statute's words and purpose. *See Timex V.I. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) (citing *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940)). Furthermore, "the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and ... ingenuity and study ... would discover." *Executive Jet Aviation v. United States*, 125 F.3d 1463, 1468 (Fed. Cir. 1997) (quoting *Lynch v. Alworth Stephens Co.*, 267 U.S. 364, 370 (1925)). Manor Care would have us selectively pluck one clause of section 51 and give it overriding effect without giving meaning to many others. They violate the very precept upon which they rely for their own construction – where possible, every word and clause in the statute should be given effect. *United States v. Menasche*, 348 U.S. 528, 538-39 (1955).

Even the plaintiffs concede that historically certification had been required independent of the employer's request for certification. *See* Pl. Mem. at 26 (discussion of pre-1996 version of section 51, the Targeted Jobs Credit). In fact, Manor Care finds some significance in the fact that the regulations implementing the pre-1996 version of section 51 specifically required that "the employer must receive a certification before the targeted jobs credit can be claimed," *see* 26 C.F.R. § 1.51-1(d)(1), whereas there is no such regulatory guidance effectuating the current WtW and WOTC procedures. Plaintiffs argue that the regulatory requirement was not consistent with the statute's intent, and that it "was either disregarded or ruled invalid in two judicial decisions" – both of which we address in the next section – and was subsequently dropped from regulatory parlance with the enactment of the 1996 version of the tax credits. *Id.* We give little weight to this argument. The IRS obviously continues to adhere to this guidance, and it is the government's position that it still applies by the terms of the statute itself. We are unwilling to assume otherwise merely from the absence of this declaration.

The plaintiffs' interpretation of section 51(d)(12) is illogical and renders irrelevant a portion of the statute. If an employee were automatically a member of a targeted group simply because a request for certification was made pursuant to section 51(d)(12)(A)(ii), there would be no need for the alternative, section 51(d)(12)(A)(i): receipt of certification by the individual's first day of work. In fact, there would be no need for state employment security agencies to review the requests at all. As the plaintiffs candidly admit, under this interpretation the agency's approval-denial function is superfluous. Oral Argument at 10:20-23. The employee's and employer's signatures under penalty of perjury would be the only safeguards ensuring that the credits were allocated properly. It is by no means evident that these signatures alone would be effective in preventing mistaken or fraudulent claims for the tax credits.

Plaintiffs believe that receipt or denial of certification is irrelevant to membership in targeted groups and thus to eligibility for the tax credits.  Manor Care attempts to explain why its reading of the statute is tenable even though it obviates the need for local agencies to review certification requests.  They maintain that the sole  purpose of the submission and review process is to create a paper trail.  However, records could easily – and more efficiently – be maintained by means other than having local agencies process requests, if neither a certification nor denial has any significance as to whether an employer ultimately receives the tax credits.

In fact, section 51(d)(12)(A) is a procedural requirement that *limits* certification and prevents local agencies from certifying employees unless they are newly hired.  Plaintiffs are misguided in characterizing the provision as the "statutory definition of certification."  Pl. Reply at 7.  The provision limits membership in targeted groups to those people whose certifications were received or requested in compliance with its time limits.  The certification requirement repeated in sections 51(d)(2)-(9) and 51A(c) is not expanded by the plain meaning of the special rules provision.  The term "special rules" itself signals that the provision refines rather than defines or enlarges the circumstances under which certification may be obtained.

Thus, the statute requires that a member of a targeted group must be certified as such.  It further requires that the certification be completed in compliance with particular procedures and within a prescribed timeframe from hiring.  Nowhere does section 51(d)(12)(A) indicate that the certification component listed in the definition of each targeted group is waived.

*Legislative Intent*

Although plaintiffs' motion ostensibly rests on the plain language of the statute, the papers repeatedly reference the legislative history of the tax credits.  Generally, we do not delve into legislative history where the statutory language is unambiguous.  *See White v. United States*, 543 F.3d 1330, 1337 (Fed. Cir. 2008) ("[I]t is a bedrock canon of statutory construction that our judicial inquiry ends where statutory language is plain and unambiguous.") (citations omitted).  Once the Court determines that the statute's terms unambiguously require certification, making an exception based on policy goals or legislative history violates this principle of statutory construction.  Even so, an examination of legislative history does not aid plaintiffs' case.

According to Manor Care, Congress intended the WOTC and WtW schemes to encourage employers to hire disadvantaged individuals, and further intended the certification requirement to minimize the burden on employers.  Pl. Mem. at 4.  Manor Care posits that its "receive or request" interpretation is more consistent with that legislative purpose than defendant's interpretation that actual certification is required.

Plaintiffs demonstrated the fallacy of their own argument.  In support of what we will call the "administrative convenience theory," Manor Care cited a provision dealing with cases in which it was subsequently discovered that an employee should not have been included in a target group.  *See* Pl. Mem. at 4-5 ("employer would not be penalized by retroactive disallowance of the credit"); Oral Argument at 10:39-40.  Under the "special rules" provision, in the subsection governing "incorrect certifications," the statute provides that if:

> (i)  an individual has been certified by a designated local agency as a member of a targeted group, and

> (ii) such certification is incorrect because it was based on false information provided by such an individual,

> the certification shall be revoked and the wages paid by the employer after the date on which notice of revocation is received by the employer shall not be treated as qualified wages.

§ 51(d)(12)(B).  While it may be so that these provisions aid the employer in some sense, in that the employer is not held responsible for an improper certification, the provisions do not support Manor Care's construction of the statute.  Indeed, this subsection, as well as the provision immediately following it, concerning an agency's explanation of a denial, section 51(d)(12)(C), reinforces the concept that ultimately the tax credit must be supported by a certification.

In expounding the special rules provision of section 51, we are not "guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."  *Kyocera*, 545 F.3d at 1355 (quoting *U.S. Natl. Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993)).  Manor Care misinterprets the purpose of subsection 51(d)(12)(A) of the special rules for certification.  The provision was not intended, as plaintiffs suggest, to serve as a substitute for formal certification, or as an expedient method of satisfying the statute in the event of lethargic agency response.  Nor was it intended to relieve employers of the eligibility determination.  Pl. Mem. at 4.

Certain statutory refinements since the original enactment of this type of tax credit  – in particular the change from requiring employer good faith efforts to determine eligibility to the use of pre-screening documents – may have had the desired effect of "streamlin[ing] administrative burdens.  *See* Pl. Mem. at 25 (quoting S. REP. NO. 104-281 (1996) and H.R. REP. NO. 104-586 (1996)).  However, the legislative history of the tax credits indicates that the purpose of the certification provision is to ensure that employers are not claiming credits retroactively for individuals who are already employed:

> [T]he Congress was concerned about the extent to which the credit was being claimed for employees with retroactive certifications, i.e., for employees hired before the employer knew such individuals were members of target groups.  Clearly, in these cases, the credit was not serving as an incentive for the hiring of target group members. Accordingly, the Act requires that certification that an individual is a member of a target group must be made or requested before the individual begins work.

STAFF OF J. COMM. ON TAXATION, 97TH CONG., GENERAL EXPLANATION OF THE ECONOMIC RECOVERY TAX ACT OF 1981 at 171 (Comm. Print 1981).  This explanation rebuts plaintiffs' characterization of the special rules provision in section 51(d)(12) as "definitional."  The special rules direct procedures to be followed.  Pl. Mem. at 26. They do not reflect two alternative definitions of the "certification" requirement.

Since the purpose of the tax credits is to encourage employers to hire members of disadvantaged groups, permitting an employer to claim credits for existing employees thwarts that goal.  To ensure that only newly hired employees' wages are being counted in the credit calculation, Congress inserted section 51(d)(12) in 1981, specifying in part that membership in a targeted group is *not* achieved *unless* the certification process begins within a certain time span of hiring; that is, the request for certification must be submitted within 21 days of hiring.  The provision limits rather than defines certification.

The Joint Committee on Taxation explained that certification, "without further investigation on the part of the employer, is sufficient evidence that the individual is a member of such a group."  STAFF OF J. COMM. ON TAXATION, 97TH CONG., GENERAL EXPLANATION OF THE ECONOMIC RECOVERY TAX ACT OF 1981 at 167 (Comm. Print 1981). The request for certification is the extent of the employer's role in the process; the agency then considers the request and issues or denies certification.

B.    Plaintiffs' Alternative Argument

Plaintiffs raise an alternative ground for their motion for partial summary judgment.  They assert that even if certification is required under the Code, withholding the tax credits from Manor Care is improper given the circumstances.  The requests for certification were denied during a period in which the Federal Government failed to clarify to state employment security agencies essential eligibility requirements for qualified IV-A recipients, veterans, food stamp recipients, and long-term family assistance recipients.  This period of uncertainty should, plaintiffs argue, operate in favor of granting them the disputed tax credits.

*Historical Context*

Because the alternative theory of relief relies on circumstances regarding the administration of the tax credits by the IRS and local agencies – substantive requirements as opposed to the procedural requirements we have discussed at length -- some additional historical context is necessary.  For this discussion we accept the parties' version of events, albeit vague and unconnected to the plaintiffs' circumstances, as set forth in their briefs and attached exhibits.

According to Manor Care, during the period in which the 3,000 denials were issued, the various state employment security agencies lacked critical guidance as to the minimum length of time that an individual had to receive a governmental grant of assistance to qualify as a "member of a family receiving assistance."  Family membership is a criterion of three targeted groups eligible for WOTC under section 51(d): qualified IV-A recipients, qualified veterans, and qualified food stamp recipients.  Similar guidance was lacking regarding qualification as a long-term family assistance recipient eligible for WtW tax credit under section 51A.

Three members of Congress responsible for drafting the statute believed that some local agencies were applying a stricter standard than was intended by the statute.  In 2002 and 2003, they requested that the IRS clarify who qualifies as a "member of a family receiving" the four particular types of assistance.  Pl. Mem., App. A at Ex. 7-8.

In November 2003, the IRS issued Revenue Ruling 2003-112, providing the clarification.  Pl. Mem., App. B at Ex. 33.  The ruling explained: "if the family receives assistance for the required period, and the individual is included on the grant for some portion of the period, the individual is a qualified IV-A recipient."  Rev. Rul. 2003-112, 2003-2 C.B. 1007.  The ruling also applied to family member status for qualified veterans, qualified food stamp recipients, or long-term family assistance recipients.  *Id.* A certain portion of previous overall requests for certification that should have been approved were almost certainly denied based on an improperly stringent standard.  Some employers who should have qualified for work opportunity and WtW tax credits on behalf of certain employees did not receive them.

In July 2006, the IRS issued Announcement 2006-49, addressing the effects of the delay in clarification.  Def. Opp. at Attachment.  The IRS, in collaboration with state agencies and the Department of Labor, "undertook a study to determine whether a significant portion of the denials of requests for certification issued before the publication of Revenue Ruling 2003-112 were the result of state agencies taking a position inconsistent with the conclusion in the revenue ruling."  Announcement 2006-49, *Industry Issue Resolution Regarding the Work Opportunity and Welfare-to-Work Tax Credits*, 2006-2 C.B. 89.  Apparently, the catalyst for this study was a trade association proposal which recommended that employers be permitted to claim WtW and work opportunity tax credits for a percentage of certification requests that had been denied prior to the guidance.  *Id.*  After first highlighting flaws in the data submitted by

the trade association, the IRS found that the fraction of overall denials that were both improper and resulted from the delay in announcing relevant guidelines to state agencies was statistically insignificant, less than 1 percent.  *Id.*  Plaintiffs assert that this study utilized tax return information post-dating their own returns, and has little or no relevance in this proceeding.  Oral Argument at 11:00-01.  Plaintiffs do not, however, suggest an alternative quantification of these improper denials.

*Guideline Delay*

In the present case, if we accept the IRS estimation, the upshot is that at most thirty of Manor Care's 3,000 requests for certification were denied erroneously due to the guideline opacity.  That projection, of course, assumes that the results of the 2005 study would reflect percentages for earlier years, including 1998 through 2001, the period which concerns this case.  Further, Manor Care does not present evidence that any of the denials were actually improper.  Mirroring the pitfalls of the industry-wide effort described above, plaintiffs provide no means to segregate which requests were denied for administrative or technical reasons as opposed to substantive denials.  *Id.* And among those denied for substantive reasons, there is no attempt to show whether those denials resulted from the same inconsistencies that gave rise to the industry resolution project.  Manor Care's summary judgment motion can only be understood as speculation, on the basis of admitted faults in administering the tax credits, that a portion of its 3,000 rejected certification requests might have been improperly denied. Mere conjecture is, of course, not an adequate foundation for the granting of summary judgment.

Manor Care submits as illustration three employees' applications for certification and the accompanying denials.  Pl. Mem., App. A at Ex. 6.  However, plaintiffs present no evidence that any of these three employees were actually members of targeted groups, but were wrongly rejected.

In an attempt to rehabilitate their infirm argument on this front, plaintiffs rely almost entirely on two non-binding district court decisions: *Perdue Farms v. United States*, 1999 WL 550389, 84 A.F.T.R. 2d 99-5216, 99-2 USTC ¶ 50,659 (D. Md. June 14, 1999)*,* and *H.E. Butt Grocery Co. v. United States,* 108 F. Supp. 2d 709 (W.D. Tex. 2000).  In both cases, because of government inaction, predecessor employment tax credits were unattainable even though they were ostensibly available for qualifying wages.  The pertinent certification provisions at issue were identical to those we review today.  *See* Economic Recovery Tax Act of 1981, Pub.L.No. 97-34, § 261, 95 Stat. 172, 261.

In *Perdue Farms*, local agencies discontinued processing requests for certification, and the taxpayers' requests were never reviewed.  Because the government did not dispute that the employees would have been certified had their requests been reviewed, the court declined to adopt a literal reading of the statute's certification requirement.  The court concluded that the government could not neglect to issue certifications that were deserved and then use the absence of certification to deny

an employer the tax credits.  The plaintiffs were awarded the tax credits.  In ruling for the taxpayers, the court adapted the "receipt or request" interpretation advanced now by our plaintiffs.

Similarly, in *H.E. Butt*, local agencies lacked funding to review many of the requests for certification.  Consequently, many of the plaintiff's requests in that case were left unanswered – certification had neither been granted nor denied.  *H.E. Butt*, 108 F.Supp. 2d at 715.  Originally, the court granted summary judgment in favor of the government.  *Id.* at 711.  On reconsideration, however, the court found that it was impossible to comply with the Treasury Regulations' certification requirement.  *Id.* at 715. The plaintiff was permitted proceed to trial and attempt to establish how many, if any, employees would have been certified had their requests been reviewed.  In doing so, the court implicitly endorsed the certification requirement and merely fashioned an alternative procedure for determining eligibility for the tax credits.  In our case, of course, plaintiffs' certification requests were answered, albeit in the negative, and those requests were apparently processed in good order.

This is perhaps the most glaring difference between our situation and that addressed by *Perdue Farms* and *H.E. Butt*.  There the plaintiffs prevailed, in courts of equity, after having their requests for certification unprocessed – neither approved nor denied – when the tax credit programs were essentially shut down.  The court in *Perdue Farms* – which Manor Care relied most heavily upon during oral argument -- found that the government's insistence on certification as a qualifying factor "turn[ed] the statute on its head by using the certification provision in an attempt to block the credit." *Perdue Farms*, slip op. at 3. This, when the plaintiff had done everything it had been asked to do with regard to the certificates, and where it was undisputed that had the local agencies reviewed the requests, proper certificates would have been issued.  *Id.*

The issue was "whether the government may deny Perdue the tax credit otherwise owing to it *because the designated local agencies failed to process the certification requests* before the program expired."  *Id.*  (emphasis added).  The local agencies in the cited cases either lacked resources to make determinations or were disassociated from the process, preventing the plaintiffs in both cases from receiving any response to their requests.  Those cases are limited to their unique factual circumstances and clearly reflect judicial remedies designed to correct an inequitable situation.  They should not be read to repeal the Code's certification requirement for all purposes.

**III.     CONCLUSION**

_____For the foregoing reasons, the **Defendant's Motion for Summary Judgment is GRANTED.  Plaintiffs' Motion for Partial Summary Judgment is DENIED.**  The Clerk is directed to DISMISS the Complaint and enter judgment in favor of the Defendant.  No costs.

**IT IS SO ORDERED.**

 s/ Lawrence M. Baskir
LAWRENCE M. BASKIR
Judge